## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>TIANA STITH,</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Plaintiff,</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>v.</td><td>*</td><td>Civil Case No.: SAG-20-00946</td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>WILLIAM J. HENNING, JR., <i>et al.</i></td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Defendants.</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
</table>

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Tiana Stith ("Plaintiff") filed this suit in the Circuit Court for Anne Arundel County, Maryland against Defendants William J. Henning, Jr., Sabra Elayne Mastalski, and Shaun David Rutherford, in their personal and individual capacities (collectively, "Defendants"). ECF 3. Defendants removed the case to federal court. ECF 2. Plaintiff asserts various state law claims, in addition to claims pursuant to 42 U.S.C. § 1983, arising out of Defendants' comments to an investigator conducting a background check for employment purposes. *Id.* Presently pending is Defendants' Motion to Dismiss, ECF 9. Plaintiff filed an opposition, ECF 13, to which Defendants filed a reply, ECF 16. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons stated below, Defendants' Motion to Dismiss will be granted as to the federal claims in Counts VI and VII,[1] and denied as moot, without prejudice, as to all other claims. Because only state law claims remain, the case will be remanded to state court for further adjudication.

---

[1] Count VIII of Plaintiff's Complaint is styled as a Count under 42 U.S.C. § 1983, alleging "violation of the Maryland Constitution." ECF 3 at 20; *see also* ECF 13 at 12 (discussing "Plaintiff's § 1983 claims in Counts VI, VII and VIII"). A claim under § 1983 exists where a person acting under color of state law deprived a plaintiff of a federal constitutional right or a right conferred by *a law of the United States. See Estate of Saylor v. Regal Cinemas, Inc.*, 54 F.Supp.3d 409, 416 (D. Md. 2014) (citing *Wahi v. Charleston Area Med. Ctr.*, 562 F.3d 599, 615 (4th Cir. 2009)) (emphasis added). Therefore, § 1983 does not provide Plaintiff a viable cause of action for

## I.   Factual Background

These facts are derived from Plaintiff's Complaint, ECF 3, and are taken as true for purposes of this Motion. Plaintiff worked for Maryland's Department of Public Safety and Correctional Services ("DPSCS"), as a Parole and Probation Officer. ECF 3 ¶¶ 7. She received ratings, ranging from satisfactory to outstanding, on all relevant performance evaluations. *Id.* ¶¶ 8, 17-18. The positive evaluations from 2017-2019 were approved by Defendants Rutherford or Mastalski. *Id.* ¶ 18. Mastalski even encouraged Plaintiff to apply for a supervisory position with DPSCS. *Id.*

In 2014, after Plaintiff transferred to a new DPSCS office closer to her home, her supervisor, for a brief period of time, was Defendant Henning. *Id.* ¶¶ 9, 11. Plaintiff and Henning had unpleasant interpersonal interactions, eventually resulting in Plaintiff filing a written complaint with Henning's supervisor, Rutherford. *Id.* ¶¶ 10-15. During the investigation, Plaintiff's supervisor was changed, and Henning stepped down from his supervisory role. *Id.* ¶ 15. Plaintiff did not work directly with Henning after that time. *Id.* ¶ 16

In late 2018, Plaintiff applied for a position as a Polygraph Examiner with the National Security Agency ("NSA"). *Id.* ¶ 19. After an interview, Plaintiff received a conditional employment offer for the position, with an annual salary that would exceed her DPSCS salary by almost $30,000. *Id.* The offer "was contingent upon a background investigation, among other things." *Id.*

In and around April, 2019, NSA began its background investigation. *Id.* ¶ 20. On or about August 5, 2019, the NSA sent a letter to Plaintiff, informing her that her employment processing

---

violation of the Maryland Constitution, but whether Plaintiff has stated an independent claim for violation of the Maryland Constitution is best addressed by the state court upon remand.

would be discontinued, and stating "As a result of your misconduct in current employment, we have determined that you do not currently meet our standards for employment." *Id.* ¶¶ 22, 37. Plaintiff filed a FOIA request, and received a response that detailed the statements provided by Defendants, and other DPSCS colleagues, to the NSA background investigator. *Id.* ¶ 22. According to Plaintiff, Defendants' statements to the NSA investigator violated the Code of Maryland Regulations ("COMAR") and incorporated false and defamatory information by accusing her of workplace misconduct, including criminal activity. *Id.* ¶¶ 21-23.

Plaintiff alleges that, as a result of Defendants' provision of false information to the NSA investigator, her background investigation containing those statements will be reviewed by prospective federal employers, and will continue to result in her denial of employment by federal government agencies requiring a security clearance. *Id.* ¶¶ 77, 85.

## II.    Standard of Review

Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the

rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650

F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011).  However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).[2]

## III.    Analysis

### a.    Qualified Immunity

Defendants contend that Plaintiff's 42 U.S.C. § 1983 claims should be dismissed on the basis of qualified immunity.  ECF 9 at 6-14.  That doctrine "shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Ridpath v. Board of Governors Marshall Univ.,* 447 F.3d 292, 306 (4th Cir. 2006) (quoting *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (internal quotations omitted).  "Government officials are entitled to the defense of qualified immunity unless a 1983 claim satisfies the following two-prong test (the 'qualified immunity test'): (1) the allegations underlying the claim, if true, substantiate the violation of a federal statutory or constitutional right; and (2) this violation was of a 'clearly established' right 'of which

---

[2] In the alternative, Defendants' Motion seeks summary judgment.  ECF 9.  Because Plaintiff has submitted a Rule 56(d) affidavit demonstrating that additional discovery is needed, the motion will not be converted to a summary judgment motion, and will be treated as a motion to dismiss.

a reasonable person would have known.'" *Ridpath*, 447 F.3d at 306 (quoting *Mellen v. Bunting*, 327 F.3d 355, 365 (4th Cir. 2003).[3]

In her opposition to the Motion, Plaintiff asserts two constitutionally protected interests, a "liberty interest" and a "property interest," and claims that she was deprived of both interests "without due process of law." ECF 13 at 14. Her Complaint, however, asserts no property interest. In fact, Counts VI and VII appear to assert entirely duplicative claims: Count VI, entitled "Violation of Constitutionally Guaranteed Liberty Interest," contends that Plaintiff "is entitled to due process prior to her employer taking any action against her that might stigmatize her and impair her right to pursue her occupation." ECF 3 ¶ 74. Count VII, similarly, asserts, "Plaintiff has a right to procedural due process when governmental action, such as that undertaken by Defendants, threatens her liberty in reputation and choice of occupation." *Id.* ¶ 83. Thus, the two Counts allege the same conduct: deprivation of a liberty interest without due process. Setting aside the inartful pleading, the facts alleged by Plaintiff, taken as true, do not establish a constitutionally protectible liberty interest or property interest, or a due process right infringed by the Defendants, and her federal constitutional claims must be dismissed.

"In order to properly maintain a due process claim, a plaintiff must have been, in fact, deprived of a constitutionally protected liberty or property interest." *Tigrett v. Rector & Visitors of Univ. of Va.*, 290 F.3d 620, 628 (4th Cir. 2002). The Supreme Court has cautioned against a broad interpretation of constitutional protections in the area of defamation, which "is a tort actionable under the laws of most states, but not a constitutional deprivation." *Siegert v. Gilley*,

---

[3] The first prong of the qualified immunity analysis overlaps with the question of whether Plaintiff has adequately stated a § 1983 claim, because if she has not articulated a plausible violation of a constitutional right, her claim must be dismissed regardless of whether the defendants are entitled to qualified immunity. The cases discussed herein address the question, in both contexts, regarding whether interests like those cited by Plaintiff are constitutionally protected.

500 U.S. 226, 233 (1991).  Specifically, "injury to reputation by itself [is] not a 'liberty' interest protected under the [Due Process Clause]."  *Id.* at 233.  "To state this type of liberty interest claim under the Due Process Clause, a plaintiff must allege that the charges against him (1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false."  *Sciolino v. City of Newport News*, 480 F. 3d 642, 646 (citing *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 n.5 (4th Cir. 1988)). Even if one could assume that the other elements had been met, it is incontrovertible that the statements in question were not made in conjunction with Plaintiff's termination or demotion from DPSCS.  In fact, she has not alleged any adverse action taken in connection with her employment by that entity.  *See also Ridpath*, 447 F.3d at 309 ("We have required that, in order to deprive an employee of a liberty interest, a public employer's stigmatizing remarks must be 'made in the course of a discharge or significant demotion.'") (internal citations omitted).

None of the cases cited by Plaintiff suggest to the contrary.  *See, e.g.*, *Sciolino*, 480 F.3d at 647-50 (finding no protectible liberty interest despite the fact that the employee was terminated and allegedly false information was placed in his personnel file without a hearing, because the employee had not sufficiently alleged that prospective employers or the public at large could view the personnel file); *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1506-07 (D.C. Cir. 1995) (finding insufficient allegation of an infringement of liberty interest where an employee had been terminated, but "the agency had taken no action to formally debar Dunn or automatically disqualify him from working on any future" contracts and where the alleged defamation had not rendered plaintiff unmarketable despite his "simple assertion that he has been unable to find employment in his chosen field"); *Larry v. Lawler*, 605 F.2d 954, 956 (7th Cir. 1978) (finding a plausible liberty interest where an employee had been rated "ineligible for employment because of unsatisfactory

employment record," which formally barred him from federal employment in any capacity for up to three years); *Greene v. McElroy*, 360 U.S. 474 (1959) (holding that before the government can revoke a security clearance which would deprive an employee of his job, the employee must be "afforded the safeguards of confrontation and cross-examination"); *Kartseva v. Dept. of State*, 37 F.3d 1524 (D.C. Cir. 1994) (remanding case to determine whether plaintiff, a translator deemed ineligible to work for the Department due to security concerns, had sufficiently stated a claim for violation of due process liberty interest, which would turn on whether the decision automatically excluded her from a definite range of employment opportunities or broadly precluded her from continuing to work as a translator); *Beatty v. Thomas*, No. Civ. A. 2:05CV71; 2005 WL 1667745 (E.D. Va. Jun. 13, 2005) (finding a liberty interest where plaintiff alleged that false information had been included in his personnel file at the time of and after his termination, which precluded him from pursuing certain Naval jobs). In sum, the case law suggests that a liberty interest exists only where the plaintiff is deprived of existing employment and/or definitively prohibited from obtaining new employment as a result of the defendant's actions. Plaintiff makes no such allegations here—only speculating that unspecified future employers might one day have access to the NSA investigation and deny her employment—and thus her straightforward allegations of defamation will not be converted to a constitutional claim for infringement of a liberty interest.

Moreover, even had Plaintiff's Complaint pled a "property interest," the facts she claims do not suggest a plausible one. Plaintiff cites a single non-controlling case, *Looney v. Black*, 702 F.3d 701, 708 (2d Cir. 2012), for the proposition that "written or verbal communications guaranteeing government employment may give rise to a property interest." ECF 13 at 22. Even accepting that proposition as true, Plaintiff has not pled any "written or verbal communications

guaranteeing government employment." Her Complaint only refers to a letter expressly conditioning her job offer on the successful completion of various conditions. ECF 3 ¶ 19.

In addition to the absence of any constitutionally protectible liberty or property interest under governing precedent, there is an added wrinkle in this case, because any "due process" that could have been afforded to Plaintiff fell within the discretion of the NSA, not the Defendants. In all of the cases cited by the parties, as discussed above, plaintiffs filed suit against employers and supervisors who made adverse employment decisions against them, while also publicly disseminating information the plaintiffs deemed to be defamatory. Here, Defendants' only alleged act of "publication" of defamatory information Defendants consisted of the statements they gave during interviews conducted by NSA investigators. The prospective harm Plaintiff cites as a "liberty interest," resulting from the permanent record maintained of those statements, was created by NSA. NSA interviewed and gathered information from Plaintiff's former supervisors and co-workers as part of its background investigation process, compiled a written report without seeking a response from Plaintiff or affording her a hearing or opportunity to respond, and reached a conclusion that the contents of the investigation merited a decision to discontinue Plaintiff's employment processing. Plaintiff has not alleged (nor could she plausibly allege) that Defendants had any authority over NSA's background verification or employment processes, such that they could have asked or ordered NSA to re-interview Plaintiff, to hold a hearing, or to allow her an opportunity to respond to their claims. Thus, even had Plaintiff been able to allege a constitutionally protected interest, she could not have stated a due process violation attributable to the Defendants.

Finally, even if this Court were to assume that some constitutional right had been violated by Defendants' actions, the right was not clearly established, and Defendants would therefore be

entitled to qualified immunity.  *See Cloaninger ex. Rel. Estate of Cloaninger v. McDevitt*, 555 F.3d 324, 330-31 (4th Cir. 2009) (requiring that "the right [be] clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right.").  Neither party has cited any law suggesting that due process must be afforded before a co-worker or supervisor can provide a statement to a background investigator.  There is therefore no precedent that could even arguably be deemed "clearly established."  *See Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) ("The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.").  Defendants are entitled to qualified immunity as to Plaintiff's federal § 1983 claims.

### b. Supplemental Jurisdiction

Defendants also ask this Court to dismiss Plaintiff's state law and Maryland constitutional claims.   28 U.S.C. § 1367(c) permits a district court to "decline to exercise supplemental jurisdiction" over state claims if, *inter alia*, the court "has dismissed all claims over which it has original jurisdiction," or, "in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  The Supreme Court has explained that district judges should "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims."  *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  "When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain,[ ] the federal court should decline the exercise of jurisdiction."  *Id.*; *see also United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966) ("Needless decisions

of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

The Fourth Circuit has confirmed that the Court, in these circumstances, is permitted to remand the case to state court. "[T]he Court decided in *Carnegie–Mellon* . . . that, in a case in which the federal claims had been deleted from the complaint by the plaintiff, before trial, following a removal from a state court, the district court had the discretion to remand the pendent state-law claims to the state court." *Farlow v. Wachovia Bank of N.C., N.A.*, 259 F.3d 309, 316 (4th Cir. 2001). After considering the *Carnegie-Mellon* factors, 484 U.S. at 350, this Court will decline to exercise supplemental jurisdiction over the remaining claims in the Complaint. While remanding the state law claims may require another court to familiarize itself with the facts of this case and delay the ultimate resolution of this action, these downsides are offset by the fact that the case has been in this Court only since April 13, 2020. It has not progressed because of the pendency of this Motion, and now consists only of claims brought pursuant to Maryland common law and the Maryland Constitution. Plaintiffs originally elected to file suit in Maryland state court and Defendants are Maryland citizens. Because the parties' disputes involve interpretation of COMAR and questions of statutory immunity under Maryland law, among other issues, Maryland has a strong interest in deciding these state law issues and the case is better suited for disposition in the Circuit Court for Anne Arundel County, where it was originally filed. Thus, Plaintiffs' state law claims will be remanded and Defendants' Motion to Dismiss will be denied as moot as to these claims. *See, e.g.*, *Hackett v. Bayview Loan Servicing, LLC*, 2018 WL 6812617, at *4 (D. Md. Dec. 27, 2018); *Williams v. Anderson*, 2012 WL 5928644, at *4 (E.D. Va. Nov. 26, 2012).

IV.     **Conclusion**

        For the reasons set forth above, Defendants' Motion to Dismiss, ECF 9, shall be granted as to Counts VI and VII, and denied as moot, without prejudice, as to the remaining state law claims.  The case will be remanded to the Circuit Court for Anne Arundel County for further proceedings.  A separate Order follows.


Dated: September 22, 2020                        /s/
                                         _____
                                         Stephanie A. Gallagher
                                         United States District Judge